# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KWB ENTERPRISES, INC. d/b/a WEST MAIN DINER,<br><br>*Plaintiff*,<br><br>v.<br><br>NATIONWIDE GENERAL INSURANCE COMPANY *et al.*,<br><br>*Defendants*. | Civil Action<br><br>No. 20-cv-5195 |

## MEMORANDUM OPINION

**GOLDBERG, J.**                                                                           **January 31, 2022**

      Governmentally-imposed shutdown orders and limitations on customer capacity to alleviate the spread of COVID-19 have taken a toll on businesses across the United States. Many of these businesses have turned to their insurance companies for help, seeking coverage for their losses. In most cases, they have been met with denials.

      Plaintiff KWB Enterprises, Inc. operates a restaurant that was forced to close by order of the Governor of Pennsylvania in response to the COVID-19 pandemic. Plaintiff seeks coverage for the business losses it incurred during the shutdown order and subsequently as a result of the public's perception that indoor dining establishments are unsafe.

      Defendants have moved to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. While I sympathize with the plight of this business owner, I will nonetheless grant the Motion and dismiss the Amended Complaint.

1

**I.     FACTS**

Taken in the light most favorable to Plaintiff as the party opposing dismissal, Plaintiff's Amended Complaint alleges the following:

**A.     The Insurance Policy**

Plaintiff, which operates a restaurant in Lansdale, Pennsylvania under the name West Main Diner, purchased insurance from Defendants for its business. The terms of coverage are set out in an insurance policy (the "Policy"). (See Exhibit 1 to Plaintiff's Amended Complaint, "Premier Businessowners Property Coverage Form".)

As specified in the Policy, coverage is provided for "direct physical loss of or damage to Covered Property … caused by or resulting from any Covered Cause of Loss." (Policy § A.) The "Covered Cause[s] of Loss," in turn, are defined to include any "direct physical loss" that is not excluded or limited. (Id. § A.3.)

The Policy also lists several "Additional Coverages," two of which are relevant here. The first, "Business Income," covers "actual loss of 'business income' [the insured] sustain[s] due to the necessary suspension of [the insured's] 'operations' during the 'period of restoration,'" provided the "suspension [is] caused by direct physical loss of or damage to property at the described premises." (Id. § A.5.g(1)(a).) The second, "Civil Authority," covers "actual loss of Business Income" and "necessary Extra Expense" caused when there is "damage to property other than property at the described premises," "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property." (Id. § A.5.j.)

## B. The Losses

On March 11, 2020, the World Health Organization declared COVID-19 a global pandemic. Every state, including Pennsylvania, has enacted measures to control the spread of COVID-19.

On March 19, 2020, Pennsylvania Governor Tom Wolf issued an Order requiring all non-"life sustaining" businesses in Pennsylvania to cease operations and close their physical locations until further notice.[1] The order specifically applied to dine-in services at restaurants and bars. A few days later, on March 23, 2020, the Governor issued a further order for residents of several counties, including Montgomery County where Plaintiff's restaurant is situated, to stay at home except for certain enumerated essential activities.[2] The stay-at-home order was subsequently extended. These orders were implemented to prevent the spread of COVID-19 at establishments like Plaintiff's where transmission can occur. As a result of these orders, Plaintiff's restaurant was forced to close its doors, and the business sustained losses. (Am. Compl. ¶¶ 74, 77, 82.)

After the shutdown orders were lifted, Plaintiff continued to lose business due to the societal perception that indoor dining establishments such as Plaintiff's restaurant create an unsafe risk of spreading COVID-19. The risk of spread includes the risk that the virus could remain on surfaces or airborne droplets that persist longer in enclosed buildings such as Plaintiff's restaurant. Plaintiff further alleges that the people who frequent its restaurant—including employees,

---

[1] Order of the Governor of the Commonwealth of Pennsylvania Regarding the Closure of All Businesses That Are Not Life Sustaining, https://www.governor.pa.gov/wp-content/uploads/2020/03/20200319-TWW-COVID-19-business-closure-order.pdf.

[2] Order of the Governor of the Commonwealth of Pennsylvania for Individuals to Stay at Home, https://www.governor.pa.gov/wp-content/uploads/2020/03/03.23.20-TWW-COVID-19-Stay-at-Home-Order.pdf.

customers, and the public—have caused the property to become "contaminated" with the virus. (Am. Compl. ¶¶ 46-47, 61-62, 78-80.)

Plaintiff now contends the above losses are covered under the Policy, for which Plaintiff has filed the present lawsuit.

## II.     LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Conclusory allegations do not suffice. Id. Twombly and Iqbal's plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." Id. Plausibility requires "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a claim." Phillips v. Cty. Of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

To determine the sufficiency of a complaint under Twombly and Iqbal, a court must (1) "take note of the elements a plaintiff must plead to state a claim"; (2) identify the allegations that are not entitled to the assumption of truth because they are no more than conclusions; and (3) "where there are well-pleaded factual allegations, … assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Burtch v. Millberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (alterations omitted). Courts must construe the allegations in a complaint "in the light most favorable to the plaintiff." Id. at 220.

When deciding a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

## III. DISCUSSION

Under Pennsylvania law, an insured bears the initial burden of establishing coverage under an insurance policy. State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 111 (3d Cir. 2009). The interpretation of policy language is a question of law for the court to decide. 401 Fourth St., Inc. v. Investors Ins. Grp., 879 A.2d 166, 170 (Pa. 2005). In doing so, the court aims to "ascertain the intent of the parties as manifested by the terms used in the written insurance policy." Id. at 171.

Words in an insurance policy are to be construed in their "natural, plain and ordinary sense." Riccio v. Am. Republic Ins. Co., 705 A.2d 422, 426 (Pa. 1997). Where the policy language is unambiguous, the court is required to give it effect. Id. On the other hand, a policy susceptible to more than one construction will be "strictly construed against the insurer." Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005). However, "the policy language must not be tortured to create ambiguities where none exist." Id.

Here, Defendants argue Plaintiff has not plausibly alleged a loss covered by the Policy. Plaintiff responds it has suffered a covered loss because the COVID-19 pandemic and associated closure orders have caused loss or damage to its property. For the reasons explained below, I agree with Defendants.[3]

### A. "Direct Physical Loss of or Damage to Covered Property"

The Policy's initial grant of coverage is for "direct physical loss of or damage to Covered Property." As Plaintiff correctly points out, this term is phrased in the disjunctive. Plaintiff must

---

[3] Defendants additionally contend that, even if there were a loss within the policy's initial grant of coverage, it would be subject to one or more exclusions. I do not reach these alternative arguments.

therefore plausibly allege a "direct physical loss of" its property or "damage to" its property. These words are to be construed in their "natural, plain and ordinary sense." Riccio, 705 A.2d at 426.

The ordinary meaning of "loss" is "destruction," "ruin," or "the act of losing possession." 1 S.A.N.T., Inc. v. Berkshire Hathaway, Inc., 513 F. Supp. 3d 623, 630 (W.D. Pa. 2021) (quoting "Loss," Merriam-Webster, https://www.merriam-webster.com/dictionary/loss). The term is additionally modified by "direct," "physical," and "of … Covered Property," all of which must be given effect. Id. Read together, the phrase "direct physical loss of … Covered Property" connotes "events that impact the physical premises." Id.

"Damage," in turn, is "'a distinct, demonstrable, and physical alteration' of [the property's] structure." Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co., 311 F.3d 226, 235 (3d Cir. 2002) (applying New York and New Jersey law) (quoting 10 Couch on Insurance § 148:46 (3d ed. 1998)). "Fire, water, smoke and impact from another object are typical examples of physical damage from an outside source that may demonstrably alter the components of a building and trigger coverage." Id. Damage may also occur from sources "unnoticeable to the naked eye." Id.

Plaintiff contends it has suffered a loss of its property in two ways, which I consider in turn. Plaintiff first contends the Governor's closure orders caused a loss of its property because Plaintiff was unable to operate its business while the orders were in effect. Plaintiff reasons that deprivation of the beneficial use of property amounts to a loss.

This argument is inconsistent with the modifiers "direct," "physical," and "of … Covered Property." Plaintiff has not alleged the closure orders caused any "actual impact to the property's structure," only "diminution of its economic value because of governmental actions that do not affect the structure." 1 S.A.N.T., 513 F. Supp. 3d at 630 (emphasis deleted). Physically, Plaintiff's

property remains in the condition it was in before the closure orders; all that changed was that Plaintiff was prohibited from carrying on certain activities there. The closure orders are therefore not a "direct physical loss of … Covered Property."

Second, Plaintiff argues the spread of COVID-19 in its premises constitutes a loss of or damage to the property. Plaintiff points out that the virus that causes COVID-19 is a physical substance that spreads, in part, by adhering to surfaces such as those in restaurants. In addition, Plaintiff alleges that, because people do in fact frequent its restaurant, viral contamination is present there.

Although this argument presents a closer question, I ultimately find it does not raise a plausible inference of coverage. Plaintiff is not alleging that viral contamination found in the restaurant forced a closure. Compare Motorists Mut. Ins. Co. v. Hardinger, 131 F. App'x 823, 826-27 (3d Cir. 2005) (finding a dispute of fact as to whether bacterial contamination of a well was "damage" to the property). Rather, Plaintiff alleges there is a viral pandemic taking place in society and people avoid the restaurant because the virus is susceptible to spreading there. (Am. Compl. ¶¶ 60-62.) Physically, the property is the same as it was pre-pandemic, and a change in society has made enclosed spaces like the restaurant less desirable. See Philadelphia Parking Auth. v. Fed. Ins. Co., 385 F. Supp. 2d 280, 288 (S.D.N.Y. 2005) (applying Pennsylvania law) ("[T]he interruption in business must be caused by some physical problem with the covered property…."); Moody v. Hartford Fin. Grp., Inc., 513 F. Supp. 3d 496, 505 (E.D. Pa. 2021) ("[T]he loss and the bar to operation from which it results must bear a causal relationship to some *physical condition* of the premises."). Although the virus incidentally contacts the property as it spreads, there is no "causal relationship" pleaded between that incidental contact and the business loss Plaintiff alleges. See Humans & Resources, LLC v. Firstline Nat'l Ins. Co., 512 F. Supp. 3d 588, 600 (E.D. Pa. 2021).

7

As pleaded, Plaintiff's loss arises not from the presence or absence of viral particles at any particular location but from the ambient risk that people in society who enter the restaurant may carry the disease. (Am. Compl. ¶ 61.) See 1 S.A.N.T., 513 F. Supp. 3d at 632 ("[E]ven if [the virus] were … so ubiquitous as to be considered present at the insured property, it still does not fall within the policy definition for a covered loss."). Plaintiff's pleading is therefore inconsistent with the modifiers "direct," "physical," and "of … Covered Property."

Other cases reinforce the notion that a loss is only "direct," "physical," and "of … Covered Property" when there has been a "physical alteration" of the property itself rather than a change in society at large. See Newchops Rest. Comcast LLC v. Admiral Indem. Co., 507 F. Supp. 3d 616, 623 (E.D. Pa. 2020). In Motorists Mutual, the physical alteration consisted of bacterial contamination in a well, and this was potentially a covered loss. 131 F. App'x at 824. In Port Authority, although the court ultimately found no covered loss, it noted that a release of asbestos fibers in the property could constitute damage. 311 F.3d at 236. Both Motorists Mutual and Port Authority describe situations in which the property itself had been altered. By contrast, in Philadelphia Parking Authority, loss of business to a parking garage caused by closure of a nearby airport did not alter the property and so was not a covered loss. 385 F. Supp. at 286-88. The situation here is most analogous to Philadelphia Parking Authority because there has been a change outside the covered property that has decreased business at the covered property.

The case most supportive of Plaintiff's position is Murray v. State Farm Fire & Cas. Co., 509 S.E.2d 1 (W. Va. 1998), in which insureds were forced to vacate their home when earth movement above the property created a risk that rocks could fall on it. Id. at 5. Although no damage had yet occurred to the building itself, the threat of future damage, sufficient to dispossess the insureds of their home, was held to be a covered direct physical loss of the property. Id. at 17.

But <u>Murray</u> describes a loss that is substantially more "direct" and "physical" than the loss alleged here. Plaintiff does not allege its restaurant was rendered physically inaccessible, only that Plaintiff cannot carry on certain business there. And the risk that members of the public who enter the building may carry a virus is not a direct, physical impingement on the property the way the threat of falling rock is. As a result, <u>Murray</u> does not support Plaintiff's coverage position in this case.

I therefore agree with Defendants that Plaintiff has not alleged a loss within the Policy's initial grant of coverage.

  **B.**   **"Business Income" Additional Coverage**

In addition to the coverage for physical loss or damage described above, the Policy provides coverage for business losses sustained during a suspension of operations "caused by direct physical loss of or damage to property at the described premises." (Policy § A.5.g(1)(a).)

Because Plaintiff has not alleged a "direct physical loss of or damage to property at the described premises," Plaintiff has not alleged coverage under the "Business Income" provision.

  **C.**   **"Civil Authority" Additional Coverage**

The Policy additionally provides coverage for business losses and expenses incurred when there has been "damage to property other than property at the described premises," "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property." (Policy § A.5.j.)

The Amended Complaint does not allege that a civil authority has prohibited access to an area around damaged property. As above, the existence of a pandemic in society at large is not damage to property. And the closure orders target Plaintiff's business based on the nature of its operations, not its proximity to any damaged structure.

9

Plaintiff has therefore not alleged coverage under this provision.

### D.     Reasonable Expectations of the Insured

Finally, Plaintiff seeks coverage under the "reasonable expectations of the insured" doctrine.

"Under Pennsylvania law, even if the terms of the insurance contract are clear and unambiguous, the insured's reasonable expectations may prevail over the express terms of the contract." Newchops, 507 F. Supp. 3d at 621. In particular, "where the insurer or its agent creates in the insured a reasonable expectation of coverage that is not supported by the terms of the policy that expectation will prevail over the language of the policy." Bensalem Twp. v. Int'l Surplus Lines Ins. Co., 38 F.3d 1303, 1311 (3d Cir. 1994).

In Tonkovic v. State Farm Mut. Auto. Ins. Co., 521 A.2d 920, 921 (Pa. 1987), an insured applied for disability insurance with the mutual understanding between himself and the agent that the policy would cover him even if he were injured at work. Id. at 921-22. Unbeknownst to the insured, the insurer proceeded to issue a policy that excluded coverage for injuries incurred in the workplace. Id. at 922. The insured had "never seen this policy nor had [the insurer] ever communicated to [the insured] that the coverage he had ordered and paid for had not been furnished." Id. In that case, the "reasonable expectation of the insured" controlled over the express language of the policy. Id. at 926.

Here, although Plaintiff argues it had a reasonable expectation the Policy would cover losses from a forced closure, Plaintiff does not explain what that expectation was based on. The only allegation is a conclusory statement that "Plaintiff had a reasonable expectation that the Policy's business interruption coverage applied where a civil authority forced closure, thereby barring access to the business due to an issue of public safety within one (1) mile of the Covered Property." (Am. Compl. ¶ 70.) This statement, which is a legal conclusion, is not entitled to the

assumption of truth on a motion of dismiss. Iqbal, 556 U.S. at 678. Plaintiff has therefore not plausibly alleged coverage based on its reasonable expectations.

### IV. CONCLUSION

For the reasons given, I will grant Defendants' Motion to Dismiss.

An appropriate order follows.